# WHEELING.

## BARLOW v. DANIELS & CO.

Submitted January 22, 1885.—Decided April 4, 1885.

The provision of Section 13 of Article III. of the Constitution of this State as amended in 1880, which declares, that "No fact tried by a jury shall be otherwise re-examined, in any case, than according to the rules of common law," applies to cases tried by a jury of six before a justice, and prohibits the re-trial of such cases by the circuit court under the provisions of chapter 8, Acts of 1881.

The facts of the case appear in the opinion of the Court.

*J. W. Kennedy* for plaintiff in error.

*J. F. Brown* and *Snyder & Dyer* for defendant in error.

SNYDER, JUDGE:

This action was originally brought before a justice of Kanawha county by George T. Barlow against F. J. Daniels & Co., to recover $53.85 due by contract; on the demand of the defendants, the case was tried by a jury of six before the justice and a verdict of $47.87 found for the plaintiff, on which the justice gave judgment. The defendants appealed to the circuit court and asked that court to try the case *de novo*, to which the appellee objected and asked the court to affirm the judgment of the justice, but the court, being of opinion that the statute under which the appeal had been taken was unconstitutional, dismissed the appeal with costs to the appellee. Both parties excepted to this judgment, the appellee because the court refused to affirm the judgment of the justice and the appellants because it dismissed the appeal, and the latter obtained the writ of error to this Court.

The single question presented to this Court is, can an action of this character tried by a jury of six before a justice and taken to the circuit court by appeal be there tried *de novo*? The solution of this question involves the interpretation of certain provisions of our Constitution and especially the thirteenth section of our bill of rights which is as follows:

"In suits at common law, where the value in controversy exceeds $20.00, exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such suit before a justice, a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined, in any case, than according to the rules of the common law."—Constitution, Article III., Section 13.

In order to fully appreciate the object and importance of this provision it is necessary to refer briefly to its origin and history.

The first authoritative declaration of the principle here contained, is found in the twenty-ninth chapter of "Magna Charta," and declares in effect that, no freeman shall be deprived of his life, liberty or property except "by legal judgment of his peers or the law of the land," adopted and confirmed by King John, June 19, 1215. This is now and has ever since been the law of England. Before our separation from England the people of the colony of Virginia, on June 12, 1776, passed our bill of rights by which the same principle was reaffirmed in these words:

"That in controversies respecting property, and in suits between man and man, the ancient trial by jury is preferable to any other, and ought to be held sacred." This provision was adopted without alteration by the convention of 1829–30, and re-adopted by the convention of 1850–51, with an amendment inserting the words "of twelve men" after the word "jury." This provision was in force here on June 20, 1863, when the first Constitution of this State went into operation, in which was the following:

"In suits at common law, where the value in controversy exceeds $20.00, the right of trial by jury, if required by either party, shall be preserved. No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law."—Constitution, 1863, Article II., section 7.

Our Constitution of 1872 amended and re-adopted this provision in these words:

"In suits at common law, where the value in controversy, *exclusive of interest and costs*, exceeds $20.00, the right of trial by *a* jury *of twelve men,* if required by either party, shall be

preserved; *except that in appeals from the judgment of justices, a jury of a less number may be authorized by law; but in trials of civil cases before a justice, no jury shall be allowed.* No fact tried by a jury shall, in any case, be otherwise re-examined than according to rules of common law."—Constitution, 1872, Article III., section 13. The *italics* indicate the new provisions not in the constitution of 1863.

By an amendment adopted in October, 1880, the provision now under consideration was substituted for the one last above given. Acts of 1883, p. 197.

So far as I have been able to find, West Virginia is the only State which has incorporated in its constitution the provision, that, "No fact tried by a jury, shall be otherwise re-examined than according to the rules of the common law." This provision was evidently taken from the seventh amendment to the Constitution of the United States which was adopted in 1791, and is still in force as a part of that constitution in these words:

"In suits at common law, where the value in controversy shall exceed $20.00, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

Under the well settled rule that, when a State adopts a constitutional or statutory provision of another State, it must be held also to have adopted the judicial construction theretofore placed upon it by the State from which it has been taken, it becomes important to determine the construction given this constitutional provision by the Supreme Court of the United States before it becomes a part of our Constitution.

Mr. Justice Story, delivering the opinion of the court in *Parsons* v. *Bedford,* 3 Pet. 446, in substance, says: "The trial by jury is justly dear to the American people. It has been always an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. The right of trial by jury is, it is believed, incorporated into, and secured in every State constitution in the Union. One of the strongest objections originally taken against the Constitution of the United States, was a want of an express provision securing the right of trial by jury in

civil cases. As soon as the constitution was adopted this right was secured by the adoption of this seventh amendment. The phrase "common law," found in this amendment, is used in contradistinction to equity and admiralty jurisprudence. The constitution had declared in the third article "that the judicial power shall extend to all cases in *law and equity* arising under this constitution, the laws of the United States," &c. and to all cases of admiralty jurisdiction. It is well known, that in civil causes in courts of equity and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases to inform the conscience of the court. When, therefore, we find the amendment requires that the right of trial by jury shall be preserved in suits at common law, the natural conclusion is, that this distinction was present to the minds of the framers of the amendment. By *common law* they meant what the constitution denominated in the third article "law;" not merely suits which the common law recognized among its old and settled proceedings, but suits in which *legal rights* were ascertained and determined, in contradistinction to those where *equitable* rights alone were recognized, and equitable remedies were administered. Probably there were few, if any, States in the Union, in which some new legal remedies differing from the old common law forms were not in use; but in which, however, the trial by jury intervened, and the general regulations in other respects were according to the course of the common law. In a just sense, the amendment, then, may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle *legal* rights. And the last clause of the amendment "is a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a *venire facias de novo*, by an appellate court, for some error of law which intervened in the proceedings."—3 Pet. 446–48.

The above construction of the said amendment was approved and applied in *The Justices* v. *Murray*, 9 Wall. 274, in which the court held an act of Congress unconstitutional and void which provided for the removal of a judgment of a State court, in which the case had been tried by a jury, to the circuit court of the United States for a re-trial on the facts and the law.

No act of Congress, and no statute of this or any other State, so far as I know, has ever defined the line of contradistinction between the jurisdiction and rules of courts of common law and of courts of equity and admiralty. The jurisdiction of these respective courts had been well understood before the adoption of this seventh amendment, and no statutory definition was therefore, deemed necessary. The existing judicial systems of the States had been founded on the principles of the English jurisprudence, and the application of the principles of the common law was universal as the rule of jurisdiction unless altered by local statutes or usage. Hence, we must infer that the phrase " according to the rules of the common law," as employed in this amendment, had reference to the common law of England as adopted in the States. The terms " suits at common law " and " cases in equity," refer of necessity to the line drawn between the respective courts of law and equity in England at some time. And the courts of the United States have long since settled that the time to which such reference must be made is the date of the adoption of the Federal Constitution in 1789; and that " suits at common law " thus ascertained and defined, mean cases " wherein *legal* rights are to be ascertained and legal remedies administered." *Bains* v. *The Schooner James*, 1 Baldwin 544. In this case the court says: " The Supreme Court has declared the object of the seventh amendment, and inferior courts must so construe and enforce it as to effectuate that object. This fundamental guarantee of the right of trial by jury, applies to cases or suits which the common law recognizes among its old and settled proceedings, in which legal rights are to be ascertained, and legal remedies administered, whatever may be the peculiar form which they may assume. 3 Pet. 447. These are cases or suits at law; let the plaintiff resort to what court he may, it does not change their nature, they

not being cases in equity or admiralty, as contradistinguished
from courts of law; the term a *case or suit at law*, refers to the
cause of action, the remedy, and the mode of enforcing it,
not to the forum to which the plaintiff may choose to resort.
This is the meaning of the term in the Constitution and the
amendment as judicially settled. 1 Baldwin 562; *United
States* v. *Wonson*, 1 Gall. 4, 20.

The said seventh amendment, as well as the provisions of
our Constitution now under consideration, declares that in all
such suits, that is, " in all suits at common law where the
value in controversy exceeds $20.00, *the right of trial by jury
shall be preserved.*"

In what does the right of trial by jury consist? The Con-
stitution furnishes no answer. It is spoken of as something
already sufficiently understood, and referred to a matter
already familiar to the public mind. It was unnecessary to
define this great right. It then stood as the representative
of an idea as certain and definite as any other in the whole
range of legal learning. It is the right recognized in the
*Magna Charter* and is the same that was brough to this Con-
tinent by the first settlers from England, and which has ever
since been claimed as the great safe-guard of life, liberty and
property. Its origin is so remote that the date of its first use
is uncertain. Blackstone, in his commentaries on the laws
of England, informs us, that traces of it are found in the laws
of all those nations which adopted the feudal system, " who
had all of them a tribunal composed of twelve good men and
true," and that " the truth seems to be, that this tribunal was
universally established among the Northern nations, and so
interwoven in their very constitution, that the earliest ac-
counts of the one give us also some traces of the other."—3
Bla. Com. 349.

By the common law the number of jurors must be twelve;
they must be impartially selected, and must unanimously
concur in the verdict. W*ork* v. *State*, 2 Ohio 296; *State* v.
*McClear*, 11 Nev. 39; *Tums* v. *Commonwealth*, 6 Metc. 225,
231; *Norvell* v. *Rice*, 2 Wis. 17; *Hays* v. *Railroad Company*,
3 *Id.* 197.

" The rules of the common law " for the re-examination of
facts tried by a jury was clearly defined and well-known in

this country at the time the Constitution of the United States was adopted. By these rules the only proceedings by which such facts could be re-examined, was by the setting aside of the verdict of the jury by the court, before which the trial was had, or by proceedings in error to an appellate court. In the latter case the record alone could be examined. The appellate court could not review the facts upon which the judgment was founded, for these always rested as the verdict of the jury which found them, but only as to questions of law as developed by the record. These proceedings as originally established by the common law did not include errors committed by the inferior court in the admission or rejection of evidence or the granting or refusal of instructions to the jury, and other errors of that character. To remedy this defect the statute Westminster 2, 13 Edw. 1, chapter 31, was passed by which when a party objected to any matter decided by the court, the judge was required to allow the exception by bill sealed by him, showing the matter so excepted to which thereby became a part of the record, and thus almost every question involved in the trial could by such bill of exceptions be brought into the record so as to be subject to review by the appellate court. If the case should be reversed on error of law thus appearing by the record, a trial *de novo* would be ordered, and thus the facts might be re-tried without regard to the findings of the first verdict. *United States* v. *Wonson*, 1 Gall. 5, 20; 3 Pet. 448; Powell on App. Pro. 45, 107.

Keeping in view these common law principles and definitions, we now proceed to consider the question directly presented in this case. The first clause of the Constitutional provision first above quoted, declares that, "In suits at common law, when the value in controversy exceeds *twenty dollars*, exclusive of interest and costs, the right of trial by jury, if required by either party, *shall be preserved.*"

This is a positive guarantee, an imperative command, that in all cases at common law, that is, all cases which are not cases in equity or admiralty according to the established practice in England at the time of our separation from her, when the value in controversy is over $20.00, the trial by jury shall be preserved, and that in no such case can any party, if he requires it, be deprived of the right of such trial.

The court in which such trial is to be had is not fixed, but the right is made inviolate, and, consequently, in whatever tribunal such case may be, the right must exist in that tribunal. This sacred and absolute right can not be taken away or impaired either by the form of the proceeding or by the constitution of the tribunal in which such suit may be brought. It is the right and not the proceeding that is guaranteed by the constitution. It is, therefore, entirely immaterial whether the justices' courts in this State are courts of record or not; nor does it matter that according to the common law they had no civil jurisdiction, and no writ of error lay to them. The right protected is entirely distinct from the form of the proceeding in which it is asserted.

Immediately following and as a part of the same sentence this clause declares that, " in *such suit* before a justice, *a jury* may consist of six persons." The words "such suit," here used, necessarily refer to and embrace the class of suits mentioned in the preceding part of the sentence, that is suits at common law, where the amount in controversy is over $20.00. It does not, however, embrace all such suits at common law, because by the twenty-eighth section of the same article of the constitution the jurisdiction of a justice is limited to not exceeding $300.00. But it does embrace all such suits where the value in controversy is over $20.00 and not exceeding $300.00. The justice is expressly given jurisdiction of all such suits, in *assumpsit*, debt, detinue and trover, and in such cases brought before a justice there is no other mode provided by the constitution for a trial by jury than the trial by a jury of six persons. Unless, therefore, the jury of six persons authorized by this provision is interpreted as meaning a jury such as is contemplated in the preceding part of the sentence, and a jury the trial by which is guaranteed by that part of the sentence, the right of trial by jury in such cases before a justice where the value in controversy is over $20.00 and not exceeding $300.00, is absolutely denied. Such a construction would eliminate the trial by jury in all cases brought before a justice. Because, if we hold, that a jury of six is not a jury within the meaning of the guarantee of the constitution, this class of cases is excepted from jury-trial, and no provision is made for

the trial of such cases by jury. If this were the true construction the provision for trial by a jury of six is made useless and given no effect whatever. For, if the effect is not to deprive the party of a trial by a jury of twelve, then it does not restrict the trial by jury, and the legislature could have enacted such a regulation without the aid of this constitutional provision. There is no provision in our present constitution, such as there was in section thirty-three article eight of the constitution of 1872 of this State before the amendment of 1880, providing that "where the amount claimed" (in an action before a justice), " shall exceed $20.00, on the application of the defendant * * * made at any time before trial, it shall be the duty of the justice" to transfer the case to the county court for trial. In any view, therefore, it seems to me, plain that the jury of six persons provided for in this clause is a jury such as the trial by which is guaranteed by the first sentence of the clause.

While a common law jury is, as we have seen, *ex vi termini,* a jury of twelve persons, it is clearly within the power of the people, by a constitutional provision, to make the number less, or, if they choose, to qualify in any other manner or abolish the trial by jury altogether.

The next clause of the constitutional provision under consideration declares, that:

"No fact tried by a jury *shall* be otherwise re-examined, *in any case,* than according to the rules of the common law." If the word "jury" in this clause refers to the words " by jury" in the preceding clause and prohibits the re-trial of any fact tried by such jury otherwise than &c., then it of necessity also refers to the jury of six in the latter part of said first clause; for, as before seen, the latter is a jury in the same sense as the former in all cases where the value in controversy does not exceed $300.00. And, if a fact tried by a jury in the one case can not be otherwise re-examined than according to the rules of the common law, then it necessarily follows, that no fact tried by the other can be otherwise re-examined. No one questions that no such re-examination can be had in the former case, and the inevitable conclusion therefore is, that it can not in the latter.

On the other hand it is claimed that the conclusion just

announced can not be sound, because it is in conflict with the last clause of the twenty-eighth section of article VIII of the same constitution which is in these words:

"*Appeals shall* be allowed from judgments of justices of the peace in such manner as may be prescribed by law."

The word "appeal" in its technical and appropriate sense, means the taking of a suit or cause and its final determination from one court or jurisdiction after final judgment to another, and generally has the effect, when the appeal is perfected, of superseding and vacating the judgment of the court from which it is taken, and placing the case in the appellate court to be tried again, *de novo*, upon its merits as though it had never been tried. This term was unknown to the English common law. It was a process which originated in the chancery courts of England and the courts modeled after the civil law. In this country the right of appeal and the mode and manner of perfecting it, are dependent upon the statutes conferring such right; but proceedings in error are common law proceedings except where the contrary is directed by statute. In appeals, the very term and practice contemplate, that the questions on the whole case, its facts and merits, are taken from the inferior to the appellate court, and not merely, as at common law, the question whether errors actually appear in the record.— *Long* v. *Hitchcock*, 3 Ohio 274; *Taff* v. *Hewett*, 1 Ohio St. 511; *Wiscart* v. *Duchey*, 3 Dall. 321.

In the American States great changes have been made by statute in proceedings in error and appeal. These statutes in many of the States, have been passed without the least regard to the distinction between appeals and writs of error. In New York writs of error in civil cases are abolished and the term appeal substituted for the review of cases in error. But in our State as well as many others these proceedings are not confounded; they are generally kept distinct, and the terms appeal and writ of error, especially in our organic law, are used in their legal and technical sense. I think it is proper to so regard the term "appeal" as employed in the constitutional question now under discussion.

Giving the term appeal this meaning, it is claimed furnishes conclusive evidence, that the framers of the Constitu-

tion and the people who adopted it intended by said provision, that the legislature should prescribe by law for the trial *de novo* of all cases tried before a justice, including such cases tried by a jury.

It must be conceded that such has always been the practice in Virginia and in this State; and such was no doubt the construction placed upon our present constitution by the legislature when it enacted chapter eight of the Acts of 1881. For, by section 169 af that chapter it is provided that, in the trial of appeals from justices, the appellate court shall hear all lawful evidence "whether such evidence was produced before the justice or not, and the cause shall be determined without reference to the judgment of the justice, on the principles of law and equity."

In reference to the proceedings by appeal in Virginia, it must be remembered that the constitutions of that State never contained a provision that, " no fact tried by a jury shall be otherwise re-examined, in any case, than according to the rules of the common law," such as ours does ; and, therefore, the question now before us could never have arisen in that State. And while it is true, that our Constitution of 1863, did contain this provision and also a provision in a different chapter for a trial by a jury of six before a justice, and the statutes under that Constitution allowed appeals in cases tried before a justice by such jury, yet we can not be controlled in our interpretation of the Constitution by that fact unless the provision so practically construed is of doubtful import.

" When the text of a constitutional provision is plain and unambiguous, courts in giving construction thereto are not at liberty to search for its meaning beyond the instrument itself." *Chesapeake & Ohio Railway Company* v. *Miller*, 19 W. Va. 408.

" Contemporary construction can never abrogate the text; it can never fritter away the obvious sense; it can never narrow down its true limitations ; it can never enlarge its natural boundaries."—Story on Const. section 407; Cooley's Const. Lim. 70.

It is only in cases, where the intent and meaning of the text of the Constitution is ambiguous or uncertain, that the practical and contemporaneous construction of it can be allowed to have any force.

It may be said, however, that conceding the provision of our Constitution, which guarantees the right of trial by jury and denies the right to re-try such cases except in the manner prescribed, is plain and unambiguous, the other provision, which authorizes appeals from judgments of justices, is equally plain and unambiguous. In reply, it may be said, admitting this to be true, which of the conflicting provisions should be disregarded? The one that guarantees the great right of trial by jury, the right which Blackstone says " has under Providence secured the just liberties of the nation for a long succession of ages," or the one which prescribes a mere form of proceeding tending rather to destroy than to protect right?

But the conflict is not positive; it is rather apparent than real. Excluding cases tried *by jury* before a justice and the power of the legislature to prescribe by law for appeals from judgments of justices is unlimited. This unlimited power will extend to nine-tenths of the cases tried by justices, and it may well be supposed that, in view of the other provisions of the Constitution, the framers of that instrument and the people intended that appeals should be provided for and allowed only in cases not tried *by jury.* But be this as it may, we can only interpret the Constitution as we find it without enquiry or conjecture as to what may have been the possible intent of its authors.

So far as the argument of convenience and expedition is concerned, we can not do any better than reply in the language of Justice Blackstone : "However *convenient* these may appear at first, (as doubtless all arbitrary powers well executed are the most *convenient,*) yet let it be again remembered, that delays and little inconveniences in the forms of justice is the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution; and that though begun in trifles, the precedent may gradually increase and spread to the utter disuse of juries in questions of the most momentous concern."

When this case was first under discussion my own convictions were very decided in favor of sustaining the appeal. It seemed to me that in view of the former practice in Virginia

and this State it could not have been intended by the amendment of the constitution to make such a radical change. But upon mature consideration of the constitutional amendment itself and the uniform interpretation given to a similar provision by the courts of the United States, I found it impossible upon any reasonable or warrantable grounds to maintain my predilections. To do so would have been, in my judgment, to disregard all the rules of legal hermeneutics.

Having come to the conclusion that the constitution prohibits appeals from judgments of justices in cases tried by a jury, the next enquiry is, what is to be done with the case before us? The only statute in force, concerning the jurisdiction of justices, their powers and duties and the mode of reviewing their judgments, is chapter eight of Acts 1881. Section ninety-one of this chapter provides that the justice may, for causes therein specified, set aside the verdict of a jury and grant a new trial. But the statute makes no provision for bills of exceptions or for the review of errors of law or fact according to the rules of the common law in cases tried by a jury. The only provision is that found in section 169, which expressly declares that the "appeal" shall be "determined without reference to the judgment of the justice." I can see no objection to the validity of this provision of the statute in any case where a jury did not intervene in the trial before the justice. But in cases where the judgment of the justice is based on the verdict of the jury this statute can have no application. Such cases cannot be reviewed otherwise than according to the rules of the common law; that is by writ of error and not by appeal.

It is not intended to express an opinion that the legislature has not the power to provide the machinery for reviewing cases tried by a jury before a justice. The fact that the legislature has not done so, if the power exists, does not prevent it from hereafter exercising the power if deemed expedient. It is certain that no such provision has been made, and consequently, there being no statutory mode of reviewing the judgment in this case, it could only be done by the common law writ of error, if at all.

Originally the writ of error issued out of chancery as a commission to the appellate court to examine alleged errors

in the record in a given case after final judgment of the inferior court, and to do in the premises what in justice ought to be done. But in the American States the writ of error usually issues out of the appellate court, requiring the inferior court to certify to it the judgment in the proceedings in order that the alleged errors may be examined and the judgment reversed or affirmed as the justice of the case may require. Powell on App. Pro. 45. In this State and most of the other States the entire proceedings for the review of common law judgments are prescribed by statute.—Code, chap. 135 ; Acts of 1882, chap. 157.

The case before us is upon a contract to pay a specified sum of money and is clearly a "suit at common law." No new trial was asked for before the justice so far as appears and the judgment was entered upon the verdict of the jury. The case was brought before the circuit court not according to any common law proceeding for the review of such cases in the appellate court, but by appeal for a trial *de novo*, and there being no statutory provision for the review of such cases, I am of opinion that the appeal was improvidently taken to the circuit court, and that, therefore, the judgment of said court dismissing the appeal should be affirmed.

AFFIRMED.